UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD COOK, | No. 1:16-cv-00514-DAD-EPG |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO DISMISS |
| GECO, INC., ALLKIOSK, INC., and JENNIFER GRAVES, | (Doc. No. 8) |
| Defendants. | |

This matter is before the court on defendants' motion to dismiss based on a purported lack of personal jurisdiction and venue over the defendants. A hearing on the matter was held on July 19, 2016. Attorney Kurt Vote appeared for plaintiff, and attorneys Jennifer Rethemeier and Kurt Kappes appeared telephonically on behalf of defendants. For the reasons discussed below, defendants' motion to dismiss will be granted for lack of personal jurisdiction.[1]

**BACKGROUND**

The dispute in this case centers on the alleged breach of a contract for capital raising services. According to the complaint, defendants GECO and ALLKIOSK—related Arizona

/////

---

[1] Because the matter is disposed of on this ground, the court declines to reach the question of whether venue is proper or whether a discretionary change of venue should be allowed.

1

1  entities[2] engaged in software development for aviation electronics—entered into a contract with
2  Boeing which rapidly expanded the companies' business.  As part of this expansion, George
3  Graves,[3] the husband of defendant Jennifer Graves,[4] contacted plaintiff, who agreed to help
4  defendants and George Graves raise capital for the businesses in exchange for a twenty-five
5  percent equity ownership interest in GECO and ALLKIOSK.  This is termed the "Capital Raise
6  Agreement" by plaintiff in his complaint.  Plaintiff alleges he completed his obligations under the
7  Capital Raise Agreement, despite the attempts of Jennifer Graves and her agent Chuck Vehlow to
8  impede his fundraising efforts, and that in March 2015, GECO secured a $4 million loan from
9  Arizona-based Enterprise Bank.  It is also alleged that defendant Jennifer Graves subsequently
10 refused to pay plaintiff his twenty-five percent equity share in the defendant companies.[5]
11      The complaint presents five causes of action:  (1) breach of contract against the corporate
12 defendants GECO and ALLKIOSK; (2) *quantum meruit* against GECO and ALLKIOSK; (3)
13 intentional interference with contract against defendant Jennifer Graves; (4) intentional
14 interference with prospective economic advantage against defendant Jennifer Graves; and (5)
15 negligent interference with prospective economic advantage against defendant Jennifer Graves.
16 (Doc. No. 1.)  Defendants argue this court lacks personal jurisdiction over them.  (Doc. No. 8 at
17 11–18.)  Additionally, defendants argue venue is improper in this court and, even if proper, the
18 case should be transferred to the District of Arizona under the discretion afforded the court by 28
19 U.S.C. § 1404(a).  (Doc. No. 8 at 18–25.)

---

[2] GECO is incorporated in Arizona with its principal place of business there as well, while ALLKIOSK is incorporated in Delaware and maintains a principal place of business in Arizona. (Doc. No. 1 at 2.)

[3] George Graves is not named in this action as a defendant.

[4] Jennifer Graves is a resident of Arizona.  (Doc. No. 1 at 2.)

[5] Plaintiff and defendants also reached a separate agreement (the "Services Agreement") according to which plaintiff would provide services as a chief financial officer ("CFO") and/or controller to GECO and ALLKIOSK, starting in July 2014.  Under that agreement plaintiff was to be paid a total of $124,435 for the one-year period of the contract.  This agreement was separate and apart from the Capital Raise Agreement, and the two are not related.  In his complaint plaintiff alleges no violations of the Services Agreement.

**LEGAL STANDARD AND ANALYSIS**

A defendant may assert, by motion, that the court lacks personal jurisdiction over her. Fed. R. Civ. P. 12(b)(2). In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction is proper. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the motion is based on written materials and no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of jurisdictional facts. *Pico*, 780 F.3d at 1211; *Fred Martin Motor Co.*, 374 F.3d at 800. While a plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977), uncontroverted allegations in the complaint must be taken as true and any conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor, *Fred Martin Motor Co.*, 374 F.3d at 800.

*1.    Legal Standard*

When there is no applicable federal statute setting forth the requirements for personal jurisdiction, the district court applies the law of the forum state in conducting its analysis. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993); *see also Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). California's long-arm statute permits California courts to exercise jurisdiction on any basis consistent with the United States and California constitutions. Cal. Civ. Pro. Code § 410.10. In order to comport with the due process clause of the Fourteenth Amendment, courts may exercise personal jurisdiction over nonresident defendants only so long as there exist sufficient "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Maintenance of the suit must "'not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Generally, there are two different types of personal jurisdiction which meet this due process standard:  general jurisdiction and specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985); *Picot*, 780 F.3d at 1211. Plaintiff concedes he cannot presently

establish general jurisdiction here.[6]  Accordingly, the issue here is whether specific jurisdiction over the defendants lies in this court.

The Ninth Circuit has a three-pronged test for determining whether a court has specific jurisdiction over a defendant:  (1) the non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.  *Picot*, 780 F.3d at 1211; *Fred Martin Motor Co.*, 374 F.3d at 802; *Bancroft & Masters*, 223 F.3d at 1086.  The plaintiff has the burden of establishing the first two of these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  *See also CollegeSource, Inc. v.*

---

[6] Plaintiff does request leave to conduct limited discovery to ascertain whether the court might have general jurisdiction over defendants. (*See* Doc. No. 12 at 21.)  However, discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).  "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) (internal quotation marks omitted).  Thus, limited discovery should not be permitted to conduct a "fishing expedition." *Rich*, 121 F.R.D. at 259 (citing *Poe v. Babcock Int'l., PLC*, 662 F. Supp. 4, 7 (M.D. Pa. 1985) and *McLaughlin v. McPhail*, 707 F.2d 800, 806–07 (4th Cir. 1983)).  Here, plaintiff seeks leave to conduct limited discovery because George Graves, the husband of defendant Graves, allegedly once sent a proposal to a client in Modesto. (*See* Doc. No. 12 at 21.)  Again, George Graves is not a defendant in this action.  While the e-mails presented to this court suggest George Graves was acting on behalf of GECO and/or ALLKIOSK in sending the proposal, this is insufficient to suggest the type of "continuous and systematic" contacts with California which could give rise to general jurisdiction. *See Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (describing the standard for establishing general jurisdiction as "fairly high").  Therefore, limited discovery for jurisdictional purposes is not warranted here.  This is especially so because plaintiff served as CFO of these companies and was in a position to know whether defendants engaged in sufficient business within California to warrant general jurisdiction here, without the need for discovery on that issue.

*AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). If plaintiff meets this burden, the burden shifts to defendants to show the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc.*, 653 F.3d at 1076; *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). The first prong of the test varies to some extent between claims sounding in contract and tort: "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Fred Martin Motor Co.*, 374 F.3d at 802 (citation omitted).

For the "purposeful availment" test, due process requires a defendant "not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citations and quotations omitted). Where a defendant "deliberately has engaged in significant activities" in a state or created "continuing obligations" between himself and the residents of a state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475–76.

For the "purposeful direction" test, this court looks to the three-part "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Fred Martin Motor Co.*, 374 F.3d at 803. This test asks whether the defendant is alleged to have (1) committed an intentional act that (2) was expressly aimed at the forum state and (3) caused harm the defendant knew was likely to be suffered in the forum state. *Id.* (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). An action taken outside the forum state with foreseeable effects within the forum state does not *per se* give rise to specific personal jurisdiction, and "'something more' than mere foreseeability" is required. *Id.* at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082 at 1087). "'[S]omething more' means conduct expressly aimed at the form." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006)).

The intentional act requirement must refer "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Fred*

5

*Martin Motor Co.*, 374 F.3d at 805–07.  The express aiming requirement depends on the specific type of tort or other wrongful conduct at issue, but must be more than "untargeted negligence."  *Id.  See also Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012).

In applying either the purposeful availment or purposeful direction tests, the underlying constitutional inquiry focuses on defendants' activities, not plaintiff's contacts with the defendant or the forum.  *Walden v. Fiore*, __ U.S. ___, ___, 134 S. Ct. 1115, 1124–25 (2014).

*2.     Application*

As noted above, this case concerns a contract dispute and related tort claims, alleging plaintiff entered an agreement with defendant Jennifer Graves and her companies GECO and ALLKIOSK to help raise capital on their behalf in exchange for a twenty-five percent equity interest (the "Capital Raise Agreement").  (Doc. No. 1.)   Plaintiff alleges that as a result of his work on behalf of the companies, he was able to secure GECO a $4 million loan from Enterprise Bank in Arizona, but never received the promised compensation.  (Doc. No. 1 at ¶¶ 22–23.)  Plaintiff bases his ability to show defendants' purposeful availment of the laws of California on the following facts:  (1) defendants knew he was a permanent California resident when they entered the agreement with him; (2) defendants intended for plaintiff to use his California contacts to secure financing for the business; and (3) defendants requested plaintiff interact with California-based entities on numerous occasions throughout the life of their agreement.  (Doc. No. 12 at 14–15.)  With respect to the purposeful direction test, plaintiff relies on an argument that defendant Graves knew plaintiff was a California resident and knew her actions would harm plaintiff primarily in California.  Plaintiff submits a declaration addressing the facts in support of this argument.  (Doc. No. 12-1.)

a.     <u>Purposeful Availment</u>

The Ninth Circuit has observed that the purposeful availment requirement "is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents."  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).  The Ninth Circuit has also recognized, however, that, "[a]s the Supreme Court has expressly cautioned, a contract alone

does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017 (citing *Burger King Corp.*, 471 U.S. at 478). *See also Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001); *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991); *Fed. Deposit Ins. Corp. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir. 1987) ("It is clear that a contract alone is not sufficient to establish purposeful interjection into a forum state."). Applying these principles, district courts in California have held that business contracts with a forum resident alone do not constitute purposeful availment. *See, e.g.*, *Browne v. McCain*, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009); *Econ. Research Servs. Inc. v. North W. Corp.*, Case No. C-07-04175 EDL, 2007 WL 4557785, at *4 (N.D. Cal. Dec. 21, 2007) (noting defendants did not seek out plaintiff because it was a resident of the forum state, and its contacts with the state were mostly incidental).[7]

Here, the parties dispute whether defendants knew plaintiff was a resident of California at the time they entered into the contract with him. However, even if defendants knew plaintiff was a California resident, that knowledge, by itself, would be insufficient to establish that defendants purposefully availed themselves of the laws of California. This is because mere contract with a forum resident is insufficient for personal jurisdiction. *See Boschetto*, 539 F.3d at 1017; *Unocal Corp.*, 248 F.3d at 924; *Roth*, 942 F.2d at 621; *British-American Ins. Co., Ltd.*, 828 F.2d at 1443.

More important is whether the defendants sought out the plaintiff because of his connections to California, as asserted in plaintiff's opposition to the pending motion. (*See* Doc. No. 12 at 15.) Plaintiff states often in his declaration that defendant Graves knew of and was relying on plaintiff's connections to funding sources in California when he was retained. (*See* Doc. No. 12-1 at ¶¶ 35–37, 44–45, 51.) This is crucial since, as plaintiff acknowledges, he ultimately secured funding for GECO from an Arizona bank, not from any funding source located in California. (Doc. No. 12-1 at ¶ 51.) According to plaintiff, under the parties' agreement the fundraising was to occur in two phases: a debt phase and a mezzanine capital / preferred equity phase. (Doc. No. 12-15 at ¶ 50). Plaintiff contends that defendant Graves terminated plaintiff

---

[7] Such decisions comport with the Supreme Court's guidance that the defendant's actions drive this inquiry, not plaintiff's status. *Walden*, 134 S. Ct. at 1124–25.

7

before he could begin the second step of the capital-raising agreement, which is the only phase of the fundraising during which plaintiff would have sought to raise funds from his California contacts. (Doc. No. 12-1 at ¶ 51.)

While this fact—defendants' intent to have plaintiff raise money from his California contacts for defendant—might be significant in establishing defendants' purposeful availment of the laws of California, it is belied by the allegations of plaintiff's own complaint. Therein, plaintiff does not allege defendants prevented him from performing the second half of his contract. Rather, plaintiff asserts he "performed fully under the Capital Raise Agreement," "succeeded in raising capital for GECO," and ultimately "demanded payment" for having completed the agreed-upon services, all of which were conducted in Arizona. (Doc. No. 1 at ¶ 27; *see also* Doc. No. 1 at ¶ 32.) According to the allegations of the complaint, defendants breached the contract only when they refused to compensate plaintiff for the services completed, per the agreement. (Doc. No. 1 at ¶¶ 28, 33.) There is no indication from the allegations of the complaint that California was involved at all in the fundraising that was actually performed by plaintiff, and the complaint does not allege that plaintiff only partially performed his obligations under the contract.[8]

Finally, plaintiff argues defendants required him to "interact[ ] with California" as part of his work for them. (Doc. No. 12 at 15.) Particularly, plaintiff points to George Graves' request that plaintiff provide feedback on a proposal to be sent to a client in Modesto. (*Id.*) Plaintiff also highlights defendants' other contract with his wife's company Birch Properties, LLC, according to which plaintiff performed CFO duties for defendants. (*Id.*) Again, even taken as true, these facts do not establish personal jurisdiction. First, George Graves is not a defendant in this action. A non-defendant third party cannot create jurisdiction over the defendants here simply because he asked for plaintiff's feedback on a proposal to a client with whom plaintiff was not involved who also happened to be located in California. *See World-Wide Volkswagen*, 444 U.S. at 295–96 (a non-defendant's transportation of a car into Oklahoma found to be insufficient to establish

---

[8] The court expresses no opinion regarding whether the complaint, in good faith, is capable of amendment in this respect.

personal jurisdiction there). The e-mails provided by plaintiff concerning this transaction suggest whatever feedback was provided was not done pursuant to the contract at issue here, but rather simply reflected a general response to an inquiry from a business associate. (*See* Doc. No. 12-2 at 36–37.) Similarly, the contract for the provision of CFO services is not in dispute here. Indeed, plaintiff goes to great pains in his declaration to make clear they are two separate, unrelated contracts. (*See* Doc. No. 12-1 at ¶¶ 44–50 (differentiating the "Services Agreement" from the "Capital Raise Agreement"); *see also* Doc. No. 12 at 10 (noting the "Services Agreement" was "in addition to, and not in lieu of, the Capital Raise Agreement").) While this might establish purposeful availment of the laws of California in relation to a dispute arising from the "Service Agreement," because the claim must be one which arises out of the defendant's forum-related activities, *Fred Martin Motor Co.*, 374 F.3d at 802, the mere fact of defendants' Services Agreement with plaintiff cannot give rise to personal jurisdiction for violations of the Capital Raise Agreement between the parties.

In short, defendants did not purposefully avail themselves of the laws of California simply by knowing plaintiff was a California resident. The contract is alleged to have involved raising capital for two Arizona-based companies, and ultimately successfully securing a loan from an Arizona bank. The only connection between California and the dispute at issue here is that plaintiff was, and apparently remains, a California resident.

        b.    Purposeful Direction

The purposeful direction test is used to determine the existence of personal jurisdiction for plaintiff's tort claims against defendant Graves. In the complaint plaintiff alleges defendant Graves "intentionally disrupted and tried to block Cook's efforts" to perform under the Capital Raise Agreement by refusing to communicate or meet with him. (Doc. No. 1 at 6.) The aforementioned Chuck Vehlow purportedly met independently with one of the banks plaintiff had been securing financing with and "initiated independent negotiations . . . thereby disrupting [plaintiff's] efforts and delaying his arrangement of financing." (Doc. No. 1 at 6.) According to the complaint, these efforts were intentional and designed to induce a breach or disruption of the

/////

contractual relationship between plaintiff and defendants GECO and ALLKIOSK.  (Doc. No. 1 at 10.)

Again, purposeful direction requires an intentional act expressly aimed at the forum state, not one with merely foreseeable ramifications therein.  *See Fred Martin Motor Co.*, 374 F.3d at 803–07.  Here, according to the allegations of the complaint, defendant Graves' acts all took place within Arizona and appear designed to interrupt the financing being sought in Arizona.  There are no allegations in the complaint that these allegedly tortious actions were "expressly aimed" at California, beyond the fact that plaintiff was a California resident.  While plaintiff in opposition to the pending motion suggests defendant interfered with his ability to conduct fundraising in California, the complaint actually alleges defendant Graves interfered with plaintiff's ability to raise capital by refusing to communicate with him and by separately contacting one of the banks located in Arizona that he was in contact with to negotiate financing.  (Doc. No. 1 at ¶¶ 38–39, 44–46, 52–53.)  Plaintiff claims he fully performed and was simply not compensated for his performance.  (Doc. No. 1 at ¶ 27.)  There are no allegations in the complaint that he was prevented by defendants' efforts from fully performing with the Arizona fundraising.  There are also no allegations in the complaint that plaintiff was required to or attempted to contact California-based sources of capital in order to perform his end of the agreement.  Indeed, both plaintiff's complaint and his opposition to the pending motion suggest the opposite:  that the only fund-raising plaintiff was required to do under the contract in order to fully perform was securing a loan from an Arizona bank to an Arizona company.  Defendant Graves's alleged interference with plaintiff's efforts in this regard simply cannot be said to have been "expressly aimed" at California.

/////
/////
/////
/////
/////
/////

**CONCLUSION**

For all of the reasons set forth above, defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 8) is granted, and the matter is dismissed without prejudice and with leave to amend.

IT IS SO ORDERED.

Dated:   **August 29, 2016**            _____
                                        UNITED STATES DISTRICT JUDGE